**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| MICHAEL OKASH, individually and on behalf of those similarly situated, | File No. 0:23-cv-00482-JRT-LIB |
| Plaintiff, | |
| vs. | **DEFENDANT ESSENTIA HEALTH'S MEMORANDUM OF LAW IN SUPPORT OF ITS PARTIAL MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT** |
| ESSENTIA HEALTH, | |
| Defendant. | |

## TABLE OF CONTENTS

INTRODUCTION ......................................................................................................... 1

BACKGROUND .......................................................................................................... 4

I.    Essentia's Public Website Discloses The Use Of The Pixel In Its Privacy Policy. ...................................................................................................... 4

II.    Plaintiff Files Multiple Complaints Against Essentia. .......................................... 5

III.    The Court Dismisses A Substantial Portion Of The Amended Complaint ................................................................................................. 5

IV.    Plaintiff Files The Second Amended Complaint. .................................................. 7

STANDARD OF REVIEW ......................................................................................... 10

ARGUMENT .............................................................................................................. 10

I.    Plaintiff Fails To State A Claim For Illegal Wiretapping (Counts I, III). ......... 10

    A.    Plaintiff Fails To Allege a Tortious or Criminal *Purpose*. ........................ 12

    B.    Plaintiff Fails To Allege an *Independent* Crime or Tort. ........................... 15

    C.    Plaintiff Fails To Allege Wrongful *Contemporary* Intent. ......................... 18

II.    Plaintiff Fails To State A Claim Under the Minnesota Health Records Act (Count IV). ................................................................................................... 19

    A.    The Searches About Dr. Nikcevich Are Not Health Records. .............. 20

    B.    The Searches About Sleep Apnea Are Not Health Records. ................ 21

    C.    Though Minnesota Caselaw Is Scant, Federal Cases Applying Similar Laws Reject Similar Allegations. ...................................................... 23

III.    New Developments Bar Plaintiff's Minnesota Consumer-Protection Claims (Counts II, V). ......................................................................................... 25

    A.    Plaintiff's Admission That He Never Read The Privacy Policy Dooms His MCFA and MUDTPA Claims ............................................. 26

    B.    The SAC Does Not Plead The Theory Referenced In The Court's Prior Order ........................................................................................ 27

    C.    With Respect to MCFA, Plaintiff Fails To Plead A Misrepresentation "In Connection With The Sale Of Any Merchandise." ........................................................................................ 28

    D.    With Respect to MUDTPA, Plaintiff Fails to Plausibly Allege Future Harm. .................................................................................... 29

IV.    The Court Should Dismiss The Challenged Claims With Prejudice. ............... 30

CONCLUSION .......................................................................................................... 30

## INTRODUCTION

For a third time, Plaintiff Michael Okash attempts to plead that Essentia Health's past use of the Meta Pixel ("Pixel") on its public-facing website, EssentiaHealth.org, is unlawful. As it has previously, the Court should dismiss most of Plaintiff's claims.

Plaintiff's first complaint failed to state claims because it alleged that the Pixel was on Essentia's private patient portal, MyChart. (Dkt. 1, ¶¶3, 117.) Essentia pointed out that was false, and Plaintiff agreed to file a new complaint. (*See* Dkt. 27 (meet-and-confer statement); Feb. 13, 2024 Hrg. Tr. at 29:18-22.)

Plaintiff's next complaint removed the MyChart allegations but still "suffer[ed] from significant pleading defects, many of which [were] symptoms of Okash's focus on Meta Pixel litigation against other healthcare providers rather than the facts of this case." (Dkt. 46 ("MTD Order") at 1.) Essentia again pointed out the defects—this time via a motion to dismiss. Plaintiff abandoned one claim and the Court dismissed most of the others without prejudice. (*Id.* at 12, 14, 18.)

Plaintiff has now filed a second amended complaint, Dkt. 51 (the "SAC"). Except for the lone common-law claim for unjust enrichment (which Essentia is not challenging here), the claims in this third attempt fail too, because they conjure statutory violations—things like intentional wiretapping or consumer fraud—out of generic factual allegations about visitor usage on Essentia's public website. The Court should again dismiss Plaintiff's statutory claims, this time with prejudice.

1

*First*, Plaintiff's wiretapping act claims fail to plausibly allege facts supporting the application of the "crime-tort carveout." (MTD Order at 8.) Plaintiff can only bring these claims if Essentia's actions were taken "for the purpose of committing" an "independent" "tortious or criminal act" "at the time" the interception occurred. *See* 18 U.S.C. §2511(2)(d); *Caro v. Weintraub*, 618 F.3d 94, 99-100 (2d Cir. 2010). The SAC comes nowhere close to meeting this standard. Its allegations focus on "marketing" or "targeted advertising" to Plaintiff, but those are not independent crimes or torts. (MTD Order at 11.) Moreover, Plaintiff does not allege that Essentia had a criminal or tortious *intent* in February 2022—the time of the sole interception identified in the SAC. (*See* SAC ¶¶22, 200.) Indeed, as of that date, no one—not even the government guidance the SAC cites (SAC at nn.70, 74)—had ever suggested that using the Pixel on a public healthcare website was problematic. *See Doe v. Kaiser Found. Health Plan, Inc.*, 2024 WL 1589982, at *10 (N.D. Cal. Apr. 11, 2024) (rejecting virtually identical allegations under crime-tort carveout).

*Second*, while Plaintiff adds some details to address shortcomings in his Minnesota Health Records Act (MHRA) claim, he fails to cure the defects. For example, allegations about his searches for Dr. Nikcevich as a "prospective" patient (SAC ¶¶21-30) could never be health records because a "patient" under MHRA is limited to natural persons who "ha[ve] received" health care services. *See* Minn. Stat. §144.291, subd. 2(g). Moreover, none of Plaintiff's alleged searches identified him as a "patient," because any public website user can run the same searches. *See, e.g., Smith v.*

*Facebook, Inc.*, 262 F. Supp. 3d 943, 955 (N.D. Cal. 2017), *aff'd*, 745 F. App'x 8 (9th Cir. 2018). Plaintiff's allegations still require an inference that someone searching a public healthcare website is a patient, which is too great a leap. *See Furlow v. Madonna Summit of Byron*, 2020 WL 413356, at *3 (Minn. App. Jan. 27, 2020). Indeed, the SAC's new allegations about a hypothetical 15-year-old pregnant woman (SAC ¶48) prove the point: Mr. Okash has presumably never been pregnant, so anything he (or his lawyers) did on the public website researching pregnancy-related conditions cannot establish his status as a "patient" for MHRA purposes.

*Finally*, new legal and factual developments doom Plaintiff's claims under the Minnesota Consumer Fraud Act (MCFA) and Minnesota Unfair Deceptive Trade Practices Act (MUDTPA). On the MCFA, Judge Menendez recently dismissed an identical MCFA claim because the healthcare provider's Pixel representations were not made "in connection with a sale of merchandise" as required under the MCFA. *Mekhail v. N. Mem'l Health Care*, 2024 WL 1332260, at *6 (D. Minn. Mar. 28, 2024). So too here. And on MUDTPA, Plaintiff can no longer receive the sole relief the Act entitles him to—injunctive relief—because, since briefing closed on Essentia's prior motion to dismiss, the Pixel has been completely removed from Essentia's website. *See* Feb. 13, 2024 Hrg. Tr. at 37:1-2; *Kurowski v. Rush Sys. for Health*, 683 F. Supp. 3d 836, 847-48 (N.D. Ill. 2023) ("*Kurowski II*") (dismissing similar claim for this reason).

All but the unjust-enrichment claim should thus be dismissed with prejudice.

## BACKGROUND

I.      **Essentia's Public Website Discloses The Use Of The Pixel In Its Privacy Policy.**

The Court is familiar with the general facts of the case (*see* MTD Order), so Essentia recites as background only the allegations necessary to decide this motion.

The case concerns the public website of Defendant Essentia Health: www.essentiahealth.org. (SAC ¶¶2, 44, 46.) This "public facing" website allows visitors—whether Essentia patients, family, friends, researchers, lawyers, court staff, or others—to "research[]" "doctors and treatments," and "investigate various treatments and medical conditions," among other things. (MTD Order at 2, 6.) Essentia has a separate, private "patient portal" (www.EssentiaMyChart.org), which allows patients, once logged in, to engage in "two-way communication" with Essentia physicians, and to share and receive "medical records" and "bills." (*Id.*) "Essentia does not use the Pixel on MyChart." (*Id.* at 3.)

Essentia discloses to website visitors in its Privacy Policy that it "may . . . use" tracking technologies on its website, including specifically the "Facebook Pixel." (*Id.* at 7; Dkt. 26-1 at 3 (policy).) The Privacy Policy also states that if a user is concerned about Essentia's use of the Pixel, the user can "opt out" of pixel tracking by "disabl[ing] cookies on [Essentia's] site." (Dkt. 26-1 at 3.)

## II.     Plaintiff Files Multiple Complaints Against Essentia.

Plaintiff Michael Okash is an Essentia website and Facebook user who lives part-time in Superior, Wisconsin. (SAC ¶¶18, 40.) He has filed several versions of his complaint against Essentia. The first, Dkt. 1, incorrectly alleged the Pixel's use on Essentia's private patient portal, so Plaintiff withdrew it. (*See* MTD Order at 5.)

Plaintiff then filed an Amended Complaint (Dkt. 15, the "AC"), which claimed that Essentia's use of the Pixel on its public website violated Plaintiff's privacy rights because Plaintiff had allegedly "research[ed]" on that website "doctors and specialists that had been referred to him" and "medical conditions and treatments for the purposes of better understanding he care, and quality of care, Essentia could provide him." (AC ¶21.) The Pixel allegedly disclosed these web searches to Meta/ Facebook, which Plaintiff claimed violated HIPAA. (*See id.* ¶¶98-105.) Plaintiff asserted six groups of claims in the Amended Complaint: (i) federal and state Wiretapping Act claims; (ii) a MHRA claim; (iii) a MUDTPA claim; (iv) a MCFA claim; (v) invasion of privacy; and (vi) unjust enrichment. (*See id.* ¶¶116-206.)

## III.    The Court Dismisses A Substantial Portion Of The Amended Complaint.

On March 26, 2024, the Court granted in part and denied in part Essentia's motion to dismiss the AC. (Dkt. 46.) The Court dismissed all wiretapping claims, the MHRA claim, and the invasion-of-privacy claim, while denying the motion as to the consumer-protection and unjust-enrichment claims. The Court gave Plaintiff leave to replead most claims. (*Id.* at 12, 14, 18.)

On the wiretapping claims, the crucial defect was Plaintiff's allegations of the "crime-tort carveout." (MTD Order at 10.) These claims could survive only if Plaintiff alleged (1) *independent* crimes or torts beyond the act of interception itself, and also (2) that the interceptions were "for the purpose of committing any criminal or tortious act." (*Id.*) Because Plaintiff's "HIPPA and privacy" violations "encompass[ed] only the simultaneous interception and disclosure of information to Meta," and because Essentia's "subsequent" use of Plaintiff's "data" for "targeted advertising" was not itself "tortious," Plaintiff's wiretapping claims failed. (*Id.* at 11.)

On the MHRA claim, the Court held that the AC failed to plausibly allege that Essentia transmitted "health records" to Meta. (*Id.* at 13.) The defect was the AC's failure to provide "specific examples" of "what information was specifically disclosed"; general allegations of "website research" were insufficient. (*Id.* at 13-14.)

By contrast, the Court ruled that Plaintiff had stated a claim under MUDTPA and MCFA, at least to the extent that Essentia's Privacy Policy allegedly "misrepresented" the extent to which Essentia used the Pixel. (*Id.* at 15-16.)[1]

---

[1] The Court dismissed Plaintiff's invasion-of-privacy claim and let stand Plaintiff's unjust-enrichment claim. Because neither of those claims is at issue in this motion, Essentia does not discuss them further.

## IV.   Plaintiff Files The Second Amended Complaint.

On April 19, 2024, Plaintiff filed the SAC. (Dkt. 51.) The SAC re-pleads all claims except one wiretapping claim and the claim for invasion of privacy. (MTD Order at 8 n.3.) The SAC includes three areas of additional detail.

*First*, Plaintiff provides more detail about topics he allegedly researched on Essentia's public website. (*See* SAC ¶¶21-38.) Plaintiff alleges that in February 2022, he "researched one of his Essentia physicians, Dr. Nikcevich." (*Id.* ¶22.) More specifically, Plaintiff alleges that he took the following steps:

- **Step 1:** "Navigated to www.essentiahealth.org";

- **Step 2:** Clicked on the "doctors or providers" page;

- **Step 3:** "Typed 'Nikcevich' into the 'search by provider name' box";

- **Step 4:** Reviewed Dr. Nikcevich's "doctor profile page," which listed various conditions that Dr. Nikcevich could help treat (¶28(d)) and various insurance plans Dr. Nikcevich would accept (¶28(c)); and

- **Step 5:** Clicked a button called "schedule [an appointment] by phone," which then revealed a scroll-down list of several different phone numbers a visitor could call, depending on their medical need (¶29).

(*Id.* ¶¶23-30.) Though Plaintiff doesn't specifically state it, the URLs associated with each of these steps—the ***only*** information that would have been sent to Meta (before the Pixel was turned off) (*id.* ¶¶87-91)—are generic and do not indicate patient status.[2]

---

[2] The URLs are: https://www.essentiahealth.org/ (step 1); https://www.essentiahealth.org/find-doctor-provider/ (step 2); https://www.essentiahealth.org/find-doctor-provider/profile/daniel-nikcevich/

Nor does Plaintiff allege that he identified himself to Meta as an Essentia patient, or that anything he clicked would have sent a URL to Meta with any indication of patient status. Rather, as the SAC's screenshots show, the "doctors or providers" page is a generally accessible webpage; one does not log in or otherwise demonstrate a relationship with Essentia to access it. (*See id.* ¶¶23, 25; nn.10-11.)

Plaintiff also alleges that, at some unknown date, he "search[ed] for" information about "sleep apnea" on the website. (*Id.* ¶31.) The SAC then describes "***an example*** of a search for sleep apnea, like the one Plaintiff [] conducted." (*Id.* ¶33) (emphasis added):

- **Step 0:** Navigate to www.essentiahealth.org;

- **Step 1:** Click on the "symptoms and conditions" page;

- **Step 2:** "Select 'sleep apnea,'" among the conditions listed;

- **Step 3:** When a pop-up box appears asking whether you "want to see a Primary Care Provider" or "want to see a Specialist," select "I want to see a Specialist";

- **Step 4:** "Review" a list of several potential Essentia locations where physicians may be able to treat sleep apnea; and

- **Step 5:** "Select [a] specific" Essentia location nearest you, which in turn leads to a webpage listing several different physicians at that location.

---

(steps 3 and 5); https://www.essentiahealth.org/patients-visitors/billing/insurance-we-accept/ (step 4).

(*Id.* ¶¶33-38.) Again, the URLs associated with each of these steps—the information that would have been sent to Meta—are generic and do not indicate patient status.[3]

Moreover, Plaintiff uses this as "an example": he does not allege that *he* actually performed this search. (*Cf. id.* ¶36 (alleging that Plaintiff "recalls researching a sleep apnea specialist from Essentia," without alleging that he found that specialist through the process outlined above).) Plaintiff also does not allege that the website asks the user to identify himself as an Essentia patient—the cited pop-up box asks users if they "want to see a Specialist," without any inquiry into patient status. (*Id.*)

*Second*, the SAC adds allegations regarding entirely hypothetical website activity that, at best, concerns unnamed class members or others not before the Court. (*See* SAC ¶¶47-50.) For example, the SAC includes screenshots from Essentia's public website showing that certain baseline appointment information could be inputted into Essentia's public webpage if a "15 [year old] female" wanted to "make [her] first OBGYN appointment for pregnancy" (*id.* ¶48), or if an "individual" wanted to "seek[] immediate care from Essentia" for a "urinary tract infection" (*id.* ¶49). Because Plaintiff did not personally conduct any of these searches, they must be set aside.

---

[3] The URLs are: https://www.essentiahealth.org/conditions-search/ (step 1); https://www.essentiahealth.org/conditions-search/results/?termId=3ce3d384-2484-e711-8108-001dd8b71c9e (steps 2-4); and https://www.essentiahealth.org/find-facility/profile/sleep-medicine-essentia-health-lakewalk-clinic-duluth/ (step 5).

9

*Third*, the SAC adds allegations meant to address the "crime-tort carveout." (*See* SAC ¶¶149-54.) Plaintiff claims, for example, that Essentia's "subsequent[]" targeted advertising was "criminal" or "tortious" because it violated HIPAA's prohibition on "disclo[sing] individually identifiable health information," 42 U.S.C. §1320d-6(a)(3), Minnesota's law against unauthorized computer access, Minn. Stat. §609.981, Minnesota's "Health Care Bill of Rights," *id.* § 144.651, and the MHRA, *id.* §144.291. (SAC ¶¶150-152.)

## STANDARD OF REVIEW

The parties and the Court agree on the standard for a motion to dismiss (*see* MTD Order at 4-5), which Essentia incorporates by reference.

## ARGUMENT

## I.   Plaintiff Fails To State A Claim For Illegal Wiretapping (Counts I, III).

The Electronic Communications Privacy Act (ECPA) and the Minnesota Wiretap Act both prohibit the "intentional[]" "interception" of "any wire, oral, or electronic communication," as well as the use or disclosure of any "content[s]" thereof. 18 U.S.C. § 2511(1); Minn. Stat. § 626A.02, subd. 1.[4] The statutes exempt from liability "part[ies] to the" intercepted "communications[]," as Essentia was here. 18 U.S.C. § 2511(2)(d); MTD Order at 9-10 (so holding).

---

[4] Because the Minnesota Wiretap Act is materially identical to the ECPA, *see* MTD Order at 8 n.2, from here on Essentia cites solely to the ECPA.

10

The party exemption does not apply, however, if a communication was "intercepted for the purpose of committing a[] criminal or tortious act in violation of the Constitution or laws of the United States or of any State." 18 U.S.C. § 2511(2)(d). This provision is called the "crime-tort carveout." (MTD Order at 10.) The Court previously held that Plaintiff failed to plausibly allege facts showing that the carveout could apply. (*Id.* at 11-12.) The sole question here is whether the SAC's new allegations cure those defects. They do not.

The Wiretapping Act's "legislative history and case law make clear that" the crime-tort carveout "is to be construed narrowly[.]" *In re DoubleClick, Inc. Privacy Litig.*, 154 F. Supp. 2d 497, 515 (S.D.N.Y. 2001). The statute originally ***entirely*** exempted parties to a recorded communication, without a carveout. *Id.* The carveout was only added in the final stages of the legislative process because the law's drafters "feared that parties would use secret recordings for insidious purposes, such as blackmail [or] stealing business secrets," where the "***intent*** in recording was to ***injure*** another party" through subsequent, unlawful activity. *Id.* (emphasis added). Thus, "the sort of conduct contemplated" by the carveout's drafters "was an interception by a party to a conversation with an intent to use that interception against the non-consenting party in some harmful way and in a manner in which the offending party had no right to proceed." *Caro*, 618 F.3d at 99.

To successfully invoke the crime-tort carveout, courts require plaintiffs to "plead sufficient facts," *id.* at 100, showing that the following three conditions exist:

1.      The recording party intercepted the plaintiff's communications "for the purpose of committing a tortious or criminal act." (an *intent* requirement) *id*;

2.      The tortious or criminal act was "independent of the intentional act of recording," (an *independence* requirement); and

3.      The intercepting party intended to commit that independent tortious or criminal act "at the time of the recording," (a *contemporaneousness* requirement). *Id.* at 99.

Because the SAC fails to plausibly allege any of these three conditions, the Court must again dismiss Plaintiff's wiretapping claims.

### A.  Plaintiff Fails To Allege a Tortious or Criminal *Purpose*.

To determine whether Essentia had a "tortious or criminal" purpose in using the Pixel and "intercepting" Plaintiff's website communications, the Court must look to Plaintiff's allegations about Essentia's "intended use of the recordings." *United States v. Jiau*, 743 F.3d 147, 152 (2d Cir. 2013); *see* MTD Order at 11 (citing *Jiau*). None of the SAC's alleged purposes are criminal or tortious.

Just as in the AC, the SAC alleges that Essentia used the website data intercepted through the Pixel "to improve and save costs on its marketing campaigns [and] improve its data analytics to increase revenue by, among other things, attracting new patients and expanding [] services for existing patients." (*Compare* AC ¶8 *with* SAC ¶8; *see also* SAC ¶5 (similarly discussing "future [ad] targeting and marketing").) But as the Court previously held, there is nothing criminal or tortious about "targeted

advertising" or "marketing." (MTD Order at 11.) Plaintiff has done nothing to remedy that fundamental defect.

Numerous cases support this conclusion, including recently and in analogous factual contexts. In *Doe v. Kaiser Found. Health Plan, Inc.*, plaintiffs alleged that Kaiser Health "use[d] . . . information collected" by similar tracking pixels on its website "for market research and customer analysis," so that Kaiser could "better reach[] and serv[e] its patients[.]" 2024 WL 1589982, at *10 (N.D. Cal. Apr. 11, 2024). The court held that such allegations did not "sufficiently allege[] a tortious purpose in Kaiser's collection of information." *Id.*; *see also, e.g.*, *B.K. v. Eisenhower Med. Ctr.*, 2024 WL 878100, at *5 (N.D. Cal. Feb. 29, 2024) (same result in Pixel healthcare context); *Mrozinski v. Aspirius Inc.*, No. 23-cv-170 (Wis. Cir. Ct. Apr. 15, 2024), slip op. at 9-10 (same, even under lower, "no-set-of-facts" pleading standard for state court).[5]

Courts have also rejected crime-tort carveout allegations in other, similarly applicable contexts. In *DoubleClick*, for example, the court held that the carveout did not apply to internet "tracking" activity because "everything in [the Complaint] suggest[ed] that DoubleClick ha[d] consciously and purposefully" adopted that tracking technology as part of "a highly-publicized market-financed business model in pursuit of commercial gain." 154 F. Supp. 2d at 518-19. And the court squarely held that "commercial gain" was a non-tortious and "permissible" goal under the

---

[5] *Mrozinski* is attached as Exhibit A to the accompanying Declaration of Jeffrey P. Justman.

Wiretapping Act. *Id.* at 518. A wealth of other decisions holds likewise.[6] The same result should follow here, because Plaintiff's allegations about crafting "targeted ads to increase [Essentia's] revenue" (SAC ¶¶151, 188) are no different than these cases.

This conclusion is even easier here than in other cases because of two additional facts highlighted in the Court's prior order: (1) Essentia limited the Pixel to its public website, not MyChart; and (2) it disclosed its use of the Pixel in its publicly available Privacy Policy. (*Supra* at 4.) To survive Essentia's motion, Plaintiff's claims must be plausible. It is implausible that a healthcare provider would limit the Pixel to a public website, disclose its use in a privacy policy (where it also told website visitors how to turn off any tracking technology), and yet still have the criminal or tortious intent necessary under the statute. *See DoubleClick*, 154 F. Supp. 2d at 518-19. In three complaints, dozens of pages of briefing, and one oral argument, Plaintiff has never cited a case finding a tortious or criminal purpose under analogous circumstances.

---

[6] *See, e.g., Katz-Lacabe v. Oracle Am., Inc.*, 2024 WL 1471299, at *2-3 (N.D. Cal. Apr. 3, 2024) ("collecting and selling data about internet users . . . to generate revenue" not a "criminal or tortious" purpose, even if defendant also made "misrepresentations" about the "extent of its" data collection); *Pena v. GameStop, Inc.*, 670 F. Supp. 3d 1112, 1120 (S.D. Cal. 2023) (collecting information "in order to create transcripts that could be shared with third parties to analyze to extract key words for marketing and other purposes" not a "criminal or tortious" purpose); *In re Meta Pixel Healthcare Litig.*,647 F. Supp. 3d 778, 797 (N.D. Cal. 2022) ("the crime-tort exception to the Wiretap Act is inapplicable where the defendant's primary motivation was to make money, not to injure plaintiffs tortiously"); *Rodriguez v. Google, LLC*, 2021 WL 2026726, at *6 n.8 (N.D. Cal. May 21, 2021) (similar); *Allen v. Quicken Loans, Inc.*, 2018 WL 5874088, at *6 (D.N.J. Nov. 9, 2018) (similar); *Cohen v. Casper Sleep, Inc.*, 2018 WL 33928277, at *4 S.D.N.Y. July 12, 2018) (similar); *In re Google Inc. Gmail Litig.*, WL 1102660, at *18 n.13 (N.D. Cal. Mar. 18, 2014) (similar).

**B. Plaintiff Fails To Allege an *Independent* Crime or Tort.**

Plaintiff also fails to allege a crime or tort that is ***independent*** of the alleged interception. That is an additional basis to dismiss, as the Court previously held. (MTD Order at 11.)

"It is well established that the crime-tort [carveout] only applies where the defendant allegedly committed a tortious or criminal act independent from the act of recording itself." (*Id.*at 10.) In other words, "[a] simultaneous tort arising from the act of recording itself is insufficient" and cannot show the "necessary" "tortious intent." *Caro*, 618 F.3d at 100. The independence requirement is important; without it, the crime-tort carveout would be "circular" and easy to circumvent. *Planned Parenthood Fed. Of Am., Inc. v. Newman*, 51 F.4th 1125, 1136 (9th Cir. 2022); *see United States v. Phillips,* 540 F.2d 319, 327 n.5 (8th Cir. 1976).

The SAC adds new allegations about a handful of crimes and torts that Essentia allegedly committed in using the Pixel on its public website. (*See* SAC ¶¶150-53.) The problem, however, is that none of the allegations are crimes or torts ***and*** independent of the Pixel's recording function.

For example, the SAC identifies four alleged crimes or torts: (1) violation of HIPAA by "disclos[ing] individually identifiable health information to another person . . . without authorization"; (SAC ¶150); (2) violation of the MHRA (*id.* ¶153); (3) a related violation of the Minnesota Health Care Bill of Rights; (*id.*) and (4) violation of Minnesota's statute making it a crime to "penetrate a computer security system or

electronic termination" without authorization. (*Id.* ¶152.) Each of these paragraphs identifies a crime or tort, but each occurred at the same time as the alleged wiretapping. They are not independent. (MTD Order at 11.)

Indeed, the Court already concluded that the AC's allegations about HIPAA and the MHRA "encompass only the simultaneous interception and disclosure of information to Meta." (MTD Order at 11). Plaintiff has done nothing to address that problem; he has simply added examples of additional crimes that present the same defect. For example, as the Court held in *Kaiser*, 2024 WL 1589982, at *2, *10, "[v]iolation[s] of HIPAA" cannot show an unlawful purpose under the carveout because "the act of interception itself cannot be the crime or tort." *See also Planned Parenthood*, 51 F.4th at 1136 (defendant's alleged intent to violate "civil RICO" cannot show a "criminal or tortious" purpose when the civil RICO claim is itself based on defendants' allegedly unlawful "recordings"); *Caro*, 618 F.3d at 101 (same for "intrusion upon seclusion," because "it is a tort that occurs through the act of interception itself").

The SAC's references to Minnesota's prohibition on unauthorized computer access (i.e., hacking) are even more afield. Plaintiff alleges that Essentia violated this statute because it "breached Plaintiff's . . . web browser[] to secretly install Meta's Pixel code that then monitored and collected" Plaintiff's "website activity." (SAC ¶152 (citing Minn. Stat. § 609.891).) Not only are these allegations coterminous with the alleged interception, but also the allegation fails for the obvious reason that

actions Essentia took on its own website cannot be "without authorization" under the statute. *Cf. Van Buren v. United States*, 593 U.S. 374, 378 (2021) (interpreting analogous federal law as covering only those "who obtain information . . . to which their computer access does not extend").

To be sure, the SAC has added new allegations that Essentia took actions "subsequent" to the act of recording, but those new allegations present a different problem: they are not tortious or criminal. For example, Plaintiff alleges that Essentia used website queries to "subsequently craft and display advertisements" to Plaintiff himself. (SAC ¶¶5, 40, 149, 186.) These are subsequent acts (and thus "independent" of the recording), but, as explained in the previous section, there is nothing criminal or tortious in such allegations. (*See* MTD Order at 11.)

Because Plaintiff has added no allegations of actions Essentia took that are independent of the recording and also criminal or tortious, the crime-fraud carveout does not apply and the Wiretapping Act claims should be dismissed.[7]

---

[7] The few cases that have found the crime-tort exception plausibly alleged in the healthcare Pixel context (1) fail to address the independence requirement; (2) involve more sensitive factual allegations about patient portals, appointment scheduling, medical tests, or purchases of sensitive products; (3) apply an incorrect legal standard; or (4) some combination. *See Mekhail*, 2024 WL 1332260, at *1, *4-5 (patient-portal allegations); *Kurowski v. Rush Sys. For Health*, 2023 WL 8544084, at *1, *3 (N.D. Ill. Dec. 11, 2023) ("*Kurowski III*") (patient-portal allegations; failing to address independence requirement); *In re Group Health Plan Litig.*, 2023 WL 8850243, at *8 (D. Minn. Dec. 21, 2023) (similar); *Hartley v. Univ. of Chi. Med. Ctr.*, 2024 WL 1886909, at *1-2 (N.D. Ill. Apr. 30, 2024) (prescription allegations and incorrect legal standard); *R.C. v. Walgreen Co.*, 2024 WL 2263395, at *15 (C.D. Cal. May 9, 2024) (all of them).

### C. Plaintiff Fails To Allege Wrongful *Contemporary* Intent.

Finally, the crime-tort carveout also does not apply because Plaintiff fails to allege that Essentia intended to violate HIPAA, or any other law, *at the time* the alleged interception occurred. *Caro*, 618 F.3d at 99-100; *see also Stewart v. Oklahoma City*, 47 F.4th 1125, 1135 (10th Cir. 2022) (emphasizing the "temporal" requirement that "runs through the one-party consent rule").

Plaintiff alleges that he used Essentia's website in "February 2022." (SAC ¶22.) The SAC, however, alleges no facts plausibly suggesting that Essentia's purpose in using the Pixel on a public website at that time was criminal or tortious. Plaintiff emphasizes a Department of Health & Human Services guidance document warning healthcare companies against using tracking technology on their websites, but that guidance came out in December 2022, months *after* the challenged "interception." (*Id.* ¶¶123-25.)[8] Plaintiff points to no other facts suggesting that Essentia contemporaneously acted with a "criminal or tortious" purpose in "intercepting" his public website query. *See Katz-Lacabe*, 2024 WL 1471299, at *3 (crime-tort carveout did not apply where plaintiff did not "plausibly allege [defendant] thought [its data collection] efforts were tortious" at the time they were enacted).

---

[8] The guidance is legally suspect in any event. As one court has noted, by claiming that HIPAA applies to public website "metadata," "the guidance goes well beyond the meaning of what [the statute] can bear." *Kurowski II*, 2023 WL 4707184, at *4. The guidance is also the subject of cross-motions for summary judgment in a case brought by the American Hospital Association. *See Am. Hosp. Ass'n v. Becerra*, No. 4:23-cv-1110 (N.D. Tex.).

Lest the main point get lost, it is implausible that a HIPAA-governed healthcare provider would intentionally violate HIPAA, or commit other crimes or torts, merely to craft advertisements targeted at public website users. There is too much to lose, and little to gain, through such actions. Plaintiff asks this Court to extend the Wiretapping Act to conduct that such laws were never intended to—and per the plain language of the laws, do not—reach. The Court should dismiss Counts I and III with prejudice.

## II.   Plaintiff Fails To State A Claim Under the Minnesota Health Records Act (Count IV).

The Court previously dismissed Plaintiff's claim under the MHRA for failing to provide "specific examples of how [Plaintiff] used the website and what information was specifically disclosed." (MTD Order at 13.) To assess whether what Plaintiff did on the Essentia website could constitute a "health record" under the MHRA, the Court directed Plaintiff (if he could) to add detail about "the doctors, conditions, or timeframe" of his searches. (*Id.* at 14.) Plaintiff has attempted to do that, but his allegations still fall short of plausibly alleging that his public website searches were "health records" under the statute.

For MHRA purposes, "health records" are defined as "any information . . . that relates to," among other things, "the past, present, or future physical or mental health or condition of *a patient*," or "the provision of health care to *a patient*[.]" *Id.* §144.291, subd. 2(c) (emphasis added). "Patient" is defined as a "natural person who

19

*has received* health care services from a provider . . ." *Id.* § 144.291, subd. 2(g) (emphasis added). Thus, a document is not a "health record" if a viewer of the document may only "infer" that the document concerns "a patient" of a facility, without any "explicit[]" confirmation in the document itself. *Furlow v. Madonna Summit of Byron*, 2020 WL 413356, at *3 (Minn. App. Jan. 27, 2020) (dismissing MHRA claim on this basis).

### A. The Searches About Dr. Nikcevich Are Not Health Records.

The SAC's new allegations primarily involve Plaintiff's efforts to "research" Dr. Nikcevich in February 2022. (*See* SAC ¶¶23-30.) Plaintiff claims that those web searches were "health records" because, based on the specific URLs Plaintiff visited, Meta could infer that Plaintiff was an Essentia "patient," and that Plaintiff was "interested in [receiving] care" from Dr. Nikcevich. (*Id.* ¶¶25(a), 30.)[9] But as the webpages cited in the SAC show, Meta could not have determined that Plaintiff was an Essentia patient simply by virtue of receiving the URLs of the websites Plaintiff visited. (*Supra* at 7 n.2 (showing each URL that Meta would have received from his searches).) All the URLs are generally accessible webpages containing general medical information; none required Plaintiff to affirm his "patient" status, the way one might

---

[9] To the extent Plaintiff alleges that Meta could discern from these URLs that he was at least a "prospective" Essentia patient, those allegations are unavailing. (*Id.* ¶¶9-10, 25.) The MHRA protects only "patient" records, and the statute defines a "patient" as someone who "*has* received health care services from a provider . . ." Minn. Stat. §144.291, subd. 2(g) (emphasis added). Thus, by the statute's plain terms, mere "prospective patient" browsing is not a "health record."

by logging into a patient portal. (*Id.*; *see also* MTD Order at 6 (noting the "MyChart" "log in" page).)

At best for Plaintiff, Meta could know that a Facebook user named Michael Okash visited various Essentia webpages providing information about an Essentia physician. Michael Okash ***could*** be a patient, or a helpful family member or a public-health researcher or even an attorney searching for evidence in support of a privacy lawsuit. Meta would know nothing more based on the URLs, and that is all Plaintiff alleges Meta received. To put it differently, nothing in the URLs reveals anything about Plaintiff's subjective intent as to why he was browsing Essentia's website. Accordingly, because the disclosed information only allowed the viewer of the information, Meta, to "infer" that the information ***could*** concern the health of someone who *might be* an Essentia patient, the information was not a "health record" under Minnesota law. *Furlow*, 2020 WL 413356, at *3.

## B. The Searches About Sleep Apnea Are Not Health Records.

Plaintiff's allegations about his website research into "sleep apnea specialists" are even weaker, for three reasons. (*See* SAC ¶¶32-38.)

***First***, Plaintiff does not allege that he conducted the precise search described in the SAC. (*See* SAC ¶33 ("An example of a search for sleep apnea, like the one Plaintiff Okash conducted . . . is outlined below . . .") (emphasis added).) This pleading issue matters because the Court directed Plaintiff to "provide specific examples of how ***he*** used the website and what information was ***specifically*** disclosed," including "details

21

about . . . timeframe." (MTD Order at 13-14 (emphasis added).) Absent these specifics, the court must dismiss. *See Doe v. DaVita, Inc.*, 2024 WL 1772854, at *2 (S.D. Cal. Apr. 24, 2024) (dismissing Pixel complaint where plaintiff alleged "research[ing] different types of dialysis" on defendant's website, but without "explain[ing] what *specific* information *they* provided to Defendant . . . via *their* browsing activity").

*Second*, and relatedly, unspecified allegations are insufficient because "named [class] representatives must allege . . . that they *personally* have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Futrell v. Cargill, Inc.*, 661 F. Supp. 3d 903, 912 (D. Minn. 2023) (Tunheim, J.) (emphasis added).

*Third*, threshold pleading deficiencies aside, the URLs disclosed through the "sleep apnea" search described in the SAC are just generally accessible webpages containing general medical information; none required Plaintiff to indicate his "patient" status. (*Supra* at 9 n.3.) Because the URLs cannot alone answer whether Plaintiff was a patient, and Plaintiff does not allege anything else was provided to Meta, Plaintiff's searches are not "health records." *Furlow*, 2020 WL 413356, at *3.

The SAC's allegations regarding hypothetical "appointment information" for a 15-year-old pregnant patient further prove the point: If Plaintiff's counsel can input hypothetical appointment information as if they were a "15 [year old] female" trying to make her "first OBGYN appointment" (SAC ¶48), the receiving party of that URL cannot know whether the information concerns an Essentia patient or someone else.

### C. Though Minnesota Caselaw Is Scant, Federal Cases Applying Similar Laws Reject Similar Allegations.

While there is "scant" caselaw interpreting what is a "health record" under the MHRA (MTD Order at 13), there is federal caselaw addressing this same language under HIPAA and state-law analogs. These cases hold that public website searches do not constitute "health records."

The best example is *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943 (N.D. Cal. 2017), *aff'd*, 745 F. App'x 8 (9th Cir. 2018). There, plaintiffs sued Meta and several website operators for running the Pixel on public health-related websites, like "cancer.net," and then using plaintiffs' browsing data to send them targeted advertisements. *Id.* at 947-48. Plaintiffs identified specific URLs allegedly containing medical information that the Pixel allegedly disclosed to Meta, including URLs showing that plaintiffs had looked up "information about a specific doctor" and ran search queries "related to the phrase 'intestine transplant.'" *Id.* at 954-55. Plaintiffs alleged that this was a wrongful disclosure of their "health records," under HIPAA and California's state-law analog. *Id.*

The court rejected plaintiffs' argument. The court noted that the URLs cited by plaintiffs were to "pages contain[ing] general health information that is accessible to the public at large," and that the "same pages [were] available to every computer, tablet, smartphone, or automated crawler" that visited defendants' websites. *Id.* at 955. "Nothing about the URLs, or the content of the pages located at those URLs,

23

relate[d] 'to the past, present, or future physical or mental health or condition *of an*

*individual*,'" and thus there was no HIPAA violation. *Id.* (emphasis in original;

quoting 45 C.F.R. § 160.103). The Ninth Circuit affirmed, because "[i]nformation

available on publicly accessible websites stands in stark contrast to the personally

identifiable patient records and medical histories protected by [HIPAA]." 745 F.

App'x at 9.

      The allegations before this Court make this an easier decision than in *Smith*.

The MHRA's "patient" standard is more demanding than HIPAA's "an individual"

standard. (*Supra* at 19-20; Minn. Stat. §144.291, subd. 2(g).) Beyond that, none of the

specific URLs identified in the SAC "unequivocally provide[] a window into

[Plaintiff's] personal medical history." *Smith*, 745 F. App'x at 9. At best for Plaintiff,

the URLs showed that Plaintiff researched a specific Essentia physician in February

2022 and (perhaps) looked up sleep apnea providers in Duluth at an unknown time.

They do not show that Plaintiff researched health information for *himself* as a

*patient* of Essentia.

      To be sure, there are cases coming out the other way at the Rule 12 stage. But

those cases alleged that the provider ran the Pixel on their patient portal or that a

specific plaintiff scheduled a specific appointment. *See, e.g.*, *Mekhail*, 2024 WL

1332260, at *11-12 (finding it "critical" to the MHRA analysis that plaintiff alleged

that defendant had installed the Pixel on its "private, patient-portal website," where

plaintiff alleged she had "communications" with her provider); *Group Health*, 2023 WL

8850243, at *2-3 (holding that the disclosure of "lab results," "medical records," and "medical bills" went "beyond" the disclosure of "non-descript, vanilla browsing history"); *Kurowski III*, 2023 WL 8544084, at *1 (plaintiff alleged that defendant installed the Pixel on its "patient portal MyChart," which "is available only to patients, and [] is password-protected"); *Cousin v. Sharp Healthcare*, 2023 WL 8007350 (S.D. Cal. Nov. 17, 2023) ("*Cousin II*") (plaintiff alleged that she "booked an appointment to obtain treatment for a medical condition" on the defendant's website, and redacting her sensitive information from public view). No such allegations are present here.

Indeed, the SAC not only fails to allege anything like a personal appointment disclosure, but also it publicly reveals the very URLs and web searches Plaintiff claims to be his "personal and sensitive" "health records." (*Compare* SAC ¶5 *with id.* ¶¶23-38.). "Plaintiff has undermined his asserted privacy interest by publicly filing documents" revealing the very information he claims to be private. *Ferrari v. Francis*, 2023 WL 5004066, at *2 (N.D. Tex. Aug. 4, 2023).

## III. New Developments Bar Plaintiff's Minnesota Consumer-Protection Claims (Counts II, V).

The SAC also continues to press MUDTPA and MCFA claims. Although the Court previously denied Essentia's motion to dismiss these claims, *see* MTD Order at 14-16, new legal and factual developments now require that both claims be dismissed.

### A. Plaintiff's Admission That He Never Read The Privacy Policy Dooms His MCFA and MUDTPA Claims.

During the hearing on Essentia's prior motion to dismiss, Plaintiff's counsel stated that Plaintiff was "unawares at all times" about Essentia's Privacy Policy. (Feb. 13, 2024 Hrg. Tr. at 33:3-4; *see also id.* at 38:18-19.) Because Plaintiff has now admitted never reading the Privacy Policy, his claims that Essentia made misrepresentations in that policy necessarily fail *as to him* because he cannot ever show a nexus between the misrepresentations and whatever harm he claims.

Under both the MCFA and MUDTPA, although "traditional common law reliance" is not required to bring a claim, a plaintiff must nonetheless establish "a causal nexus between the conduct alleged to violate [the MUDTPA and MCFA] and the damages claimed." *Group Health Plan, Inc. v. Philip Morris Inc.*, 621 N.W.2d 2, 4, 13 (Minn. 2001). "[A]n element of individual reliance is embedded in the causal nexus requirement because a fraudulent or misleading statement cannot by its nature cause harm unless the statement had some impact on inducing the individual plaintiff's actions." *State v. Minn. Sch. of Bus., Inc.*, 935 N.W.2d 124, 134 (Minn. 2019).

Because Plaintiff has now conceded that he was "unawares" of the Privacy Policy, Plaintiff cannot show a "causal nexus" between the alleged misrepresentations in it and any damages he has allegedly suffered. *See Luckey v. Alside, Inc.*, 245 F. Supp. 3d 1080, 1097 (D. Minn. 2017) (Tunheim, J.) (dismissing MCFA and MUDTPA claims where the plaintiff alleged that "purchasers 'relied' on Alside's offending

statements," without alleging "any facts supporting [a] causal relationship between the alleged statutory violations and *Plaintiffs'* damages"). So too here.

### B. The SAC Does Not Plead The Theory Referenced In The Court's Prior Order.

Even if Plaintiff had pleaded that he read the Privacy Policy, the MCFA and MUDTPA claims should be dismissed for the additional reason that Plaintiff has chosen not to plead the only viable theory identified in the Court's prior order.

The Court denied Essentia's prior motion to dismiss the MCFA and MUDTPA claims because it identified a hypothetical and unpleaded partial misrepresentation: the Court was concerned that Essentia's Privacy Policy could be construed as advising website visitors that Essentia only used the Pixel to track users who visited the website through "a Facebook ad," when in fact the Pixel tracked users whether they "clicked through from a Facebook ad or navigated to the page by any other means." (MTD Order at 7, 15-16.) The Court suggested that there could be a subset of class members who read the Privacy Policy's Pixel disclosure and were misled as to its scope. But the SAC does not assert this theory. (*See* SAC ¶¶158-72, 206-13.) Applying the "party presentation principle," these claims therefore must be dismissed.[10]

---

[10] Under the "party presentation" principle, the Court can only presume that Plaintiff has decided not to pursue this theory, whether because he was not misled in this way, or for some other reason. *See Ivey v. Audrain Cty.*, 968 F.3d 845, 851 (8th Cir. 2020) ("The principle of party presentation counsels against adopting theories of a plaintiff's case that he does not advance. . ."); *Schawn's Co. v. Cai*, 2023 WL 171882, at *5 (D. Minn. Jan. 12, 2023) (Tunheim, J.). The Court cannot allow theories to proceed that Plaintiff has chosen not to pursue.

### C. With Respect to MCFA, Plaintiff Fails To Plead A Misrepresentation "In Connection With The Sale Of Any Merchandise."

Plaintiff's MCFA claim also fails because Plaintiff does not allege that Essentia's misrepresentations were made "in connection with the sale of any merchandise," as the statute requires. Minn. Stat. § 325F.69, subd. 1.

Judge Menendez's recent decision in *Mekhail* is exactly on point. That case involved an analogous "Pixel complaint" brought against another Minnesota healthcare provider, North Memorial ("North"). The plaintiff there, represented by the same counsel as Plaintiff here, alleged that statements in North's website privacy policy were "misleading" because North failed to disclose both the extent of its Pixel usage and that its use of the Pixel "allegedly violated" "federal and state privacy laws." 2024 WL 1332260, at *1, *6. Just like here, the plaintiff brought a MCFA claim. In her complaint, plaintiff alleged that "[t]he medical services that [North Memorial] markets, provides, offers, and/or sells are considered merchandise" under the MCFA. *Id.* at *7. Plaintiff makes the same allegation here, verbatim. (*See* SAC ¶209.)

Judge Menendez dismissed the claim because the plaintiff did not allege "that there was a misrepresentation made by North in connection with its provision of any medical services." *Mekhail*, 2024 WL 1332260, at *6. Rather, plaintiff only "allege[d] a misrepresentation related to data privacy[.]" *Id.* Because "North is not in the business of providing data privacy," the complaint failed to adequately allege a nexus between any misrepresentation and "the 'sale of any merchandise' by North." *Id.* So too here.

### D. With Respect to MUDTPA, Plaintiff Fails to Plausibly Allege Future Harm.

In its prior order, the Court observed that "[w]here a plaintiff remains a patient and has little choice but to continue to use the website to receive complete medical care, a deceptive trade practices claim may proceed." (MTD Order at 15.) As support, the Court cited *Kurowski v. Rush Sys. For Health*, 659 F. Supp. 3d 931, 943 (N.D. Ill. 2023) ("*Kurowski I*"), where the court denied a motion to dismiss an analogous deceptive-trade-practices claim.

But as Plaintiff admitted at the prior hearing and in the SAC, the Pixel is no longer on Essentia's public website. (Feb. 13, 2024 Hrg. Tr. at 37:1-2 (conceding that the Pixel was "undeployed"); *accord* SAC ¶24 ("*While* Essentia utiliz*ed* the [] Pixel.") (emphasis added).) Because the Pixel is no longer on Essentia's website, there is no longer any "plausible prospect" that the Pixel will cause "real and immediate" "future harm" to Plaintiff. *Barclay v. Icon Health & Fitness, Inc.*, 2022 WL 486999, at *1-2 (D. Minn. Feb. 17, 2022); Minn. Stat. §325D.45; MTD Order at 14.

The very *Kurowski* cases the Court cited previously support this result. There, like here, the plaintiff filed an amended complaint after the court issued *Kurowski I*, in which she conceded that the Pixel was no longer operating on the defendant's website. *See Kurowski II*, 2023 WL 4707184, at *7. Thus, in *Kurowski II*, the court dismissed the plaintiff's injunction-seeking deceptive-trade-practices claim, noting that

there was no longer a "threat of future harm to Kurowski that is sufficient to support her claim for injunctive relief under the DTPA." *Id.* So too here.

Finally, although the Court suggested in its prior order that "[i]njunctive relief may" be necessary to remedy other "ongoing harms from the already-collected data," MTD Order at 15, the SAC does not plead any such harms. Speculation is insufficient to state a MUDTPA claim. *See Barclay*, 2022 WL 486999, at *2.

## IV. The Court Should Dismiss The Challenged Claims With Prejudice.

Because the Court has already given Plaintiff a chance to amend, it should dismiss with prejudice. *See Hamilton-Warwick v. U.S. Bancorp.*, 2016 WL 6916798, at *2 (D. Minn. Nov. 22, 2016) (Tunheim, J.).

## <u>CONCLUSION</u>

The Court should dismiss Counts I-V of the SAC with prejudice.

Dated: May 23, 2024.

**FAEGRE DRINKER BIDDLE & REATH LLP**

 /s/ *Jeffrey P. Justman*
Jeffrey P. Justman (#390413)
Anderson C. Tuggle (#0400277)
Andrew M. Taylor (#0504170)
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
Telephone: (612) 766-7000
jeff.justman@faegredrinker.com
anderson.tuggle@faegredrinker.com
andrew.taylor@faegredrinker.com

Justin O. Kay (*pro hac vice*)
320 South Canal Street
Suite 3300
Chicago, IL 60606
Telephone: (312) 569-1000
justin.kay@faegredrinker.com

Zoe K. Wilhelm (*pro hac vice*)
1800 Century Park East
Suite 1500
Los Angeles, CA 90067
Telephone: (310) 203-4000
zoe.wilhelm@faegredrinker.com

*Attorneys for Defendant Essentia Health*